1
GORDON SILVER
GERALD M. GORDON, ESQ.

E-Filed On __9-18-08__

2
Nevada Bar No. 229
E-mail:  ggordon@gordonsilver.com

3
MATTHEW C. ZIRZOW, ESQ.

4
Nevada Bar No. 7222
E-mail:  mzirzow@gordonsilver.com

5
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169

6
Telephone (702) 796-5555

7
Facsimile (702) 369-2666

8
and

9
PILLSBURY WINTHROP SHAW PITTMAN LLP
PATRICK J. POTTER, ESQ. (*Admitted Pro Hac*)

10
E-mail: patrick.potter@pillsburylaw.com
JERRY HALL, ESQ (*Admitted Pro Hac*)

11
E-mail: jerry.hall@pillsburylaw.com

12
2300 "N" Street, N.W.
Washington, D.C. 20037

13
Tel: (202) 663-8928
Fax: (202) 663-8007

14

15
Attorneys for Western Aircraft, Inc.

16
**UNITED STATES BANKRUPTCY COURT**

17
**FOR THE DISTRICT OF NEVADA**

18

19
In re:

SILVER STATE HELICOPTERS, LLC,

20

21
       Debtor.

Case No.: BK-S-08-10936-MKN
Chapter 7
(Jointly Administered)

22
In re:

SILVER STATE SERVICES CORP.,

23

24
       Debtor.

Case No.: BK-S-08-10935-MKN
Chapter 7

Date:  N/A
Time:  N/A

25

26
**WESTERN AIRCRAFT, INC.'S NOTICE OF APPEAL**

27
       Western Aircraft, Inc. ("Western"), by and through its undersigned counsel, respectfully

28
submits this Notice of Appeal.  This is an appeal of: (1) Memorandum Decision on Motion of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101639-001/619848.doc

1  Western Aircraft, Inc. for Order Requiring Payment of Administrative Expense Claim, Made

2  Pursuant to 11 U.S.C. §365(d)(3), 503(b) and 507(a)(1), And for Allowance of Administrative

3  Claim Under 11 U.S.C. §503(b), And Trustee's Emergency Motion to Strike Extant Document

4  [Dkt. No. 535] On Order Shortening Time (the "Memorandum") [Dkt. No. 1014]; (2) the Order

5  on Memorandum (the "Order") [Dkt No.1018]; and (3) the Amended Memorandum [Docket

6  No. 1022], copies of which are attached hereto as Exhibits "1," "2" and "3," respectively.

7      Please take notice that Western has separately requested certification of this appeal

8  directly to the U.S. Court of Appeals pursuant to 28 U.S.C. § 158(d)(2)(A)(i).  Please further take

9  notice that, in the event that Western's certification request is denied, Western has also filed a

10  separate notice of election to have the appeal heard by the United States District Court for the

11  District of Nevada pursuant to 28 U.S.C. § 158(b)(1).

12      The names of the parties and the names, addresses and telephone numbers of their

13  respective counsel are as follows:

14  1.    Appellant – Western Aircraft, Inc., and its counsel:

15  GORDON SILVER
    GERALD M. GORDON, ESQ.
16  MATTHEW C. ZIRZOW, ESQ.
    3960 Howard Hughes Pkwy., 9th Floor
17  Las Vegas, Nevada 89169
18  Telephone (702) 796-5555

19  PATRICK J. POTTER, ESQ.
    JERRY HALL, ESQ
20  Pillsbury Winthrop Shaw Pittman LLP
    2300 "N" Street, N.W.
21  Washington, D.C. 20037
22  Tel: (202) 663-8000

23  2.    Appellee -  James F. Lisowski, Sr. as Chapter 7 Trustee

24  ANTHONY A. ZMAILA, ESQ.
    VICTORIA L. NELSON, ESQ.
25  Santoro Driggs, Walch, Kearney, Holley & Thompson
26  400 South Fourth Street, Third Floor
    Las Vegas, Nevada 89101
27  Tel: (702) 791-0308

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101639-001/619848.doc

2

1    DATED this __19th__ day of September, 2008.

2                                                    GORDON & SILVER, LTD.

3

4                                                    By: _____
                                                     GERALD M. GORDON, ESQ.
5                                                    MATTHEW C. ZIRZOW, ESQ.
                                                     3960 Howard Hughes Pkwy., Ninth Floor
6                                                    Las Vegas, NV 89169

7                                                    and

8                                                    PILLSBURY WINTHROP SHAW PITTMAN LLP
9                                                    PATRICK J. POTTER, ESQ.
                                                     JERRY HALL, ESQ.
10                                                   2300 "N" Street, N.W.
                                                     Washington, D.C. 20037
11
                                                     Counsel for Western Aircraft, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101639-001/619848.doc

3

# EXHIBIT "1"

**Entered on Docket**
**September 16, 2008**

_____
**Hon. Mike K. Nakagawa**
**United States Bankruptcy Judge**

1
2
3
4
5
6            UNITED STATES BANKRUPTCY COURT

7                    DISTRICT OF NEVADA

8

9   In re                                    )        Case No. BK-S-08-10936-MKN
10                                           )
     SILVER STATE HELICOPTERS, LLC,          )        Chapter 7
11                                           )
              Debtor.                        )
12   _____)
13                                           )
     Jointly administered with               )
14   _____)
15   In re                                    )        Case No. BK-S-08-10935-MKN
16   SILVER STATE SERVICES CORP.,             )        Chapter 7
17              Debtor.                        )
18   _____)        Date:   April 23, 2008
                                                       Time:   9:30 a.m.
19

20       **MEMORANDUM DECISION ON MOTION OF WESTERN AIRCRAFT, INC.**
         **FOR ORDER REQUIRING PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM,**
21       **MADE PURSUANT TO 11 U.S.C. §365(d)(3), 503(b) AND 507(a)(1), AND FOR**
         **ALLOWANCE OF ADMINISTRATIVE CLAIM UNDER 11 U.S.C. §503(b), AND**
22       **TRUSTEE'S EMERGENCY MOTION TO STRIKE EXTANT DOCUMENT**
              **[DKT. NO. 535] ON ORDER SHORTENING TIME**
23

24           These matters were heard on April 23, 2008.  The appearances of counsel were noted on

25   the record.  After presentation of oral arguments, the matters were taken under submission based

26   on the written materials submitted by the parties and the representations of counsel at the

27   hearing.

28                                            1

1

## BACKGROUND[1]

2     Silver State Helicopters, LLC ("Debtor") filed a voluntary petition for Chapter 7

3 liquidation on February 4, 2008.[2]  (Dkt# 1) James F. Lisowski, Sr., was appointed as the

4 bankruptcy trustee ("Trustee") to administer the case.  The petition was a "skeleton" petition

5 inasmuch as it was accompanied only by a list of 20 largest unsecured creditors and a mailing

6 matrix, but no schedules of assets and liabilities or a statement of financial affairs.  Amended

7 schedules of assets and liabilities were filed on February 19, 2008.  (Dkt#88)  An amended

8 personal property Schedule "B" along with an amended executory contract and unexpired lease

9 Schedule "G" was filed on March 6, 2008.  (Dkt# 179)

10     On March 13, 2008, a Motion for Order Requiring Payment of Administrative Expense

11 Claim Made ("Payment Motion") Pursuant to 11 U.S.C. §§ 365(d)(3), 503(b) and 507(a)(1), and

12 For Allowance of Administrative Expense Claim Under 11 U.S.C. § 503(b) (Dkt#222) was filed

13 by Western Aircraft, Inc. ("Western").  The Payment Motion was accompanied by a supporting

14 legal memorandum ("Western Brief") (Dkt#223) and a Declaration of Allen Hoyt ("Hoyt

15 Declaration") (Dkt#224).   On March 14, 2008, the Trustee filed an Emergency Motion for an

16 Order Authorizing Rejection of a Lease of Non-Residential Real Property Effective March 31,

17 2008 (Dkt#256).  Both the latter motion ("Lease Rejection Motion") and the Payment Motion

18 pertain to the same lease of aircraft hangar space located in Boise, Idaho ("Boise Lease").[3]  On

19

20 ───────────────────

21    [1]  In this Memorandum Decision, all references to "Section" shall be to the provisions of
the Bankruptcy Code, 11 U.S.C. section 101, et seq., unless otherwise indicated.   Likewise, all

22 references to "Rule" shall be to the Federal Rules of Bankruptcy Procedure unless otherwise
indicated.

23

24    [2]  On the same date, a separate Chapter 7 petition was filed by a related entity, Silver
State Services Corporation, denominated Case No. 08-10935.  On May 22, 2008, in both cases,

25 orders were entered (Dkt #s 251 and 633) for the two cases to be jointly administered with Silver
State Helicopters to serve as the lead case.

26

27    [3]  On the same date, the Trustee filed 31 similar motions involving other aircraft hangar
spaces located in various parts of the United States.

28                          2

1  March 18, 2008, an order was entered shortening time ("OST") so that the Payment Motion

2  could be heard on April 1, 2008.  (Dkt#269)

3      On March 25, 2008, a hearing on the Lease Rejection Motion was conducted.  After

4  arguments were presented, the Court granted the motion and the Boise Lease was rejected

5  effective March 31, 2008.  A written order was entered on June 2, 2008.  (Dkt# 669)

6      The Payment Motion was initially heard on April 1, 2008.  The Trustee had filed written

7  opposition ("Trustee's Opposition") on March 27, 2008.  (Dkt#349)   In response, Western filed

8  a Supplement to Declaration of Allen Hoyt ("Supplemental Hoyt Declaration") as well as a

9  Declaration of Patrick J. Potter ("Potter Declaration) in support of the Payment Motion. (Dkt #s

10  368 and 369)

11      At the April 1 hearing ("initial hearing") on the Payment Motion, the Court directed

12  counsel for Western and the Trustee to file additional briefs on the issue of whether a landlord of

13  nonresidential real property is entitled to a postpetition administrative claim that has priority

14  over other administrative creditors.  Western was given until April 8 to file a brief, the Trustee

15  was given until April 18 to file his memorandum, and the hearing was continued to April 23,

16  2008.

17      In lieu of an additional brief, Western filed a Notice of Intent ("Intent Notice") on April

18  7, 2008 (Dkt# 428) that simply repeated its original legal position and did not address the issue

19  framed by the Court.  On April 18, 2008, the Trustee filed his brief ("Trustee's Supplemental

20  Brief") addressing whether a landlord is afforded a "super-priority administrative claim" for the

21  estate's obligations on an unexpired lease of nonresidential real property prior to rejection.

22  (Dkt#520) A joinder in the Trustee's response was filed by secured creditor ORIX Finance

23  Corporation ("ORIX").  (Dkt#522)   On April 22, 2008, without leave of court, Western filed a

24  reply ("Western Supplemental Reply") to the briefs submitted by the Trustee and ORIX.  (Dkt#

25  535).  With respect to the unauthorized reply filed by Western, the Trustee filed an Emergency

26  Motion to Strike Extant Document [Dkt. No. 535] on Order Shortening Time ("Motion to

27

28                                          3

1  Strike"). (Dkt# 537)

2      A hearing was conducted on April 23, 2008. After oral arguments were presented, the

3  matter was taken under submission.

4                          **APPLICABLE LEGAL STANDARDS**

5      The treatment of executory contracts and unexpired leases is governed by Section 365.

6  Subject to bankruptcy court approval, a trustee or a debtor-in-possession may assume or reject an

7  executory contract or unexpired lease of the debtor. See 11 U.S.C. § 365(a).[4]  Section 365 treats

8  leases of nonresidential real property leases differently than leases of residential real property.

9  In a Chapter 7 proceeding, an unexpired lease of residential real property is deemed rejected 60

10 days after the case is commenced, unless it is assumed by the bankruptcy trustee or additional

11 time is ordered by the bankruptcy court. See 11 U.S.C. § 365(d)(1). In bankruptcy

12 reorganization proceedings, an unexpired lease of residential real property may be assumed or

13 rejected any time before confirmation of the reorganization or debt adjustment plan, unless a

14 specific time is ordered by the bankruptcy court. See 11 U.S.C. § 365(d)(2).

15     With respect to an unexpired lease of nonresidential real property, Section 365 directs

16 that the debtor-in-possession "shall timely perform all of the obligations of the debtor" after the

17 case is filed "until such lease is assumed or rejected." See 11 U.S.C. § 365(d)(3)(Emphasis

18 added.). For cause shown, however, the bankruptcy court "may extend...the time for

19 performance of any such obligation that arises within 60 days after the [petition] date..., but the

20 time for performance shall not be extended beyond such 60 day period." Id. (Emphasis added.)

21 The debtor has the burden of demonstrating cause for an extension of the performance obligation

22 under Section 365(d)(3). See, e.g., In re Pac-West Telecomm, Inc., 377 B.R. 119, 126

23 (Bkrtcy.D.Del. 2007)(denying request for extension where debtors merely alleged that they were

24 too busy during first 60 days of bankruptcy case).

25 ────────────────

26      [4] While Section 365 refers to the rights and obligations of a bankruptcy trustee, a
   Chapter 11 debtor-in-possession has the same rights and obligations, with exceptions not
27 applicable to this case, under Section 1107(a).

28                                    4

1       If an unexpired lease of nonresidential real property is not assumed by the debtor-in-

2   possession within 120 days after commencement of the bankruptcy case, the lease is deemed

3   rejected and the subject property must be surrendered. <u>See</u> 11 U.S.C. § 365(d)(4).[5]  Within the

4   120-day period, a 90-day extension of the period may be obtained from the court on cause

5   shown. <u>See</u> 11 U.S.C. § 365(d)(4)(B)(i).  Subsequent extensions may be granted only with the

6   consent of the lessor. <u>See</u> 11 U.S.C. § 365(d)(4)(B)(ii).

7   **DISCUSSION**

8       The Court first addresses the threshold question of whether the Western Supplemental

9   Brief should be stricken.  Then the Court will address whether immediate payment of

10   postpetition rent is required under the circumstances presented.

11   **I.        TRUSTEE'S MOTION TO STRIKE.**

12       At the initial hearing on April 1, counsel for Western requested an opportunity to

13   brief the issue of whether nonresidential real property landlords effectively or legally have

14   priority status for unpaid postpetition rent ahead of other administrative claimants.  The briefing

15   schedule agreed by the parties was specific: Western's brief was due on April 8, 2008, and the

16   Trustee's memorandum was due on April 18, 2008.  The April 23, 2008 continued hearing date

17   also was agreed.  Instead of providing the additional authorities requested by the Court, however,

18   Western simply filed its "Notice of Intent" stating that it "does not believe that additional

19   briefing of the issue is warranted given the unambiguous text of Section 365(d)(3); though

20   Western has no objection to the trustee briefing the issue if he wishes." <u>See</u> Intent Notice at

21   2:23-25.

22       In compliance with the agreed schedule, the Trustee filed his brief by the April 18

23   deadline.  Four days later, which was the day before the continued hearing, Western filed its

24   Supplemental Reply without leave of court.  Not unexpectedly, the Trustee filed his Motion to

25   _____

26      [5] The unexpired leases of nonresidential real property must be assumed or rejected by the earlier of 120 days after the petition date or the date a bankruptcy plan is confirmed.  <u>See</u> 11

27   U.S.C. § 365(d)(4)(A)(i and ii).

28   5

1  Strike the late-filed brief, but seeks no other sanction.

2         At the hearing, Western's counsel argued that unauthorized reply brief should not be

3  stricken because there was no order prohibiting Western from filing the brief.  Counsel argued

4  that under "usual motion practice", the moving party is allowed to file the final brief.[6]  It

5  appears, however, that counsel was unaware or had simply forgotten that the hearing on the

6  Payment Motion was scheduled pursuant to the OST specifically requested by Western's

7  attorneys.  The OST prepared by Western's counsel specifically provided that any replies in

8  support of the Payment Motion must be filed no later than noon on March 31, 2008.  In reply to

9  the Trustee's Opposition, Western filed the Supplemental Hoyt Declaration as well as the Potter

10 Declaration.

11        At the initial hearing, additional briefing was permitted by the Court because Western's

12 counsel requested it.  A specific and limited schedule for submission of the parties' briefs was

13 agreed.  Western submitted its Intent Notice prior to the deadline.  Having requested opportunity

14 to brief the issue, Western specifically eschewed additional briefing.  Only after the Trustee

15 timely filed his additional brief did Western file its Supplemental Reply that contains more pages

16 than the Trustee's memorandum and also seeks additional relief.

17        Against this backdrop, Western's position is indefensible.  If the Supplemental Reply had

18 been merely late, its filing might be characterized as neglect.  In view of the Intent Notice filed

19 by Western as well as the bizarre justification offered at the hearing, however, submission of the

20 Supplemental Reply was, at best, a transparent attempt to "sandbag" the Trustee.  The

21 Supplemental Reply was not authorized and will be stricken.[7]

22 _____

23        [6] Counsel professed to have been "taken aback" by the Trustee's Motion to Strike and
   asserted that his co-counsel and his local counsel would have brought it to his attention if they
24 thought the Supplemental Reply was not authorized.  It is clear that Western already had
   exercised its opportunity to reply under the very OST its counsel had prepared.  It is unclear why
25 none of Western's counsel were aware of it.

26        [7] The Court also will not consider the joinder filed by ORIX regarding the Trustee's
27 Supplemental Brief since ORIX never originally filed a response to the Payment Motion.

28                                    6

**II.    WESTERN'S PAYMENT MOTION.**

The Debtor's schedules did not disclose the Boise Lease until March 6, 2008 when the Debtor filed its Schedule "G". Prior to the filing of Schedule "G", however, Western allegedly contacted the Trustee on several occasions, requesting payment under the Boise Lease. See Payment Motion at 2:28 to 3:7. At the initial hearing, the Trustee's counsel disputed that communications were received from Western and indicated that the Trustee had no specific knowledge of the Boise Lease until after the Debtor filed Schedule "G". The parties do not dispute, however, that Western was not paid postpetition rent for the partial month of February[8] nor the entire month of March. In addition to the foregoing rent, Western asserts that the estate would be obligated to pay postpetition legal fees incurred pursuant to Section 29 of the Boise Lease. See Western Brief at 9:12-14.[9]

As previously noted, Section 365(d)(2) applies only in proceedings other than a Chapter 7 liquidation and includes no provision to reduce the amount of time for a trustee to make a determination to assume or reject an unexpired lease of nonresidential real property.

---

[8] A partial month of rent under a lease is commonly referred to as a "stub month" with the amount determined by deriving the percentage of the full month after the bankruptcy petition is filed, multiplied by the monthly rent. Apparently, a majority of courts include the stub month in the bankruptcy estate's rent obligation under Section 365(d)(3). See In re Picturesque, LLC, 2006 WL 3820891 (Bkrtcy.D.Ariz. December 22, 2006)(Hollowell, J.). Although the Payment Motion does not specify the amount of rent being sought by Western, Exhibit "1" to the Supplemental Hoyt Declaration indicates that Western is seeking stub rent for the period February 6 through February 29, 2008 in the amount of $3,806.90 and full rent for the period March 1 through March 31, 2008, in the amount of $4,600. The total amount for the period February 6, 2008 through March 31, 2008, is $8,406.90. Although Exhibit "1" for some reason calculated the stub rent from February 6, 2008 rather than the February 4, 2008 petition date, the Trustee has not disputed Western's inclusion of the stub rent in its administrative claim. Exhibit "1" does not include a request for a late fee.

[9] At the initial hearing, the Trustee disputed the reasonableness of the fees that Western was seeking under Section 29 of the Boise Lease, taking particularly exception to the hourly rate apparently being charged. Because any dispute over the reasonableness of the hourly rate might require an evidentiary hearing, the Court deferred any ruling on the attorney's fees being claimed by Western under the Boise Lease.

7

1   Presumably, Western did not seek to compel the Trustee to assume or reject the Boise Lease

2   under Section 365(d)(2) because the provision simply does not apply.

3         In contrast, Section 365(d)(3) applies in Chapter 7 liquidation proceedings as well under

4   the reorganization chapters of the Bankruptcy Code and requires immediate performance of the

5   rent obligations for such leases after the bankruptcy case is commenced.  Section 365(d)(3)

6   clearly affords more protective treatment to nonresidential lessors whose premises may be

7   involved in prolonged efforts to reorganize.  Upon a showing of cause, a bankruptcy trustee or a

8   debtor-in-possession may be granted temporary relief from such lease performance but Section

9   365(d)(3) specifically provides that "...the time for performance shall not be extended beyond

10  such 60-day period."[10]  Thus, even if cause is shown, the obligations that arise under a

11  nonresidential real property lease within the initial 60-day period cannot be postponed to a time

12  after the 60-day period has elapsed.

13        The Trustee, however, did not request an extension to time to meet the estate's obligation

14  under Section 365(d)(3) to pay postpetition rent.  Rather, the Trustee filed a motion to reject the

15  Boise Lease shortly after the Debtor confirmed the existence of the lease by filing its Schedule

16  "G".  As a result of the Trustee's motion, the Boise Lease was rejected as of March 31, 2008.

17        While neither party disputes that the Trustee's rejection of the Boise Lease limits the

18  Trustee's exposure under the lease, rejection does not address the obligation under Section

19  365(d)(3).  Rather, the Trustee argues that he should not be required to immediately pay the rent

20  otherwise demanded by Section 365(d)(3) because there are no funds presently on hand to pay

21  the claimed rent.  See Trustee's Opposition at 3:15-18.  At the initial hearing, counsel for the

22  Trustee indicated that there was no objection as to allowance of an administrative claim for the

23

24  _____

25        [10]  Under Section 365(d)(3), the maximum extension permitted in the instant case would
     have been to April 4, 2008, i.e., the 60th day after the filing of the Debtor's bankruptcy petition.

26  By that date, the Trustee would have been obligated under the Boise Lease to have made the
     February and March rental payments.  But for the rejection effective March 31, 2008, the Trustee

27  arguably would have been obligated to pay the rent due on April 1.

28                                                    8

1   amount of rent due under the Boise Lease, but merely as to the timing of the payment.  While not

2   disputing the Trustee's asserted lack of immediately available funds, Western still argues that

3   Section 365(d)(3) demands immediate payment.  Western now specifically rejects any assertion

4   that its claim has priority over any other administrative claim.  See Intent Notice at 2:2:9-12 and

5   2:22-23.[11]

6          In support of its position that it is entitled to immediate payment notwithstanding the lack

7   of available funds, Western relies on the circuit court decisions in Towers v. Chickering &

8   Gregory (In re Pacific-Atlantic Trading Co.), 27 F.3d 401 (9th Cir. 1994), Koenig Sporting

9   Goods Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.), 203 F.3d 986 (6th Cir. 2000),

10   and CIT Communications Finance Corp. v. Midway Airlines Corp. (In re Midway Airlines

11   Corporation), 406 F.3d 229 (4th Cir. 2005).  See Western Brief at 3:4 to 7:19.  None of these

12   decisions, however, is dispositive.

13          In Pacific-Atlantic Trading, the Chapter 7 trustee did not formally reject an unexpired

14   lease of a substantial amount of commercial office space.  The lease was deemed rejected 60

15   days after entry of an order for relief pursuant to then-Section 365(d)(4).[12]  Prior to the end of the

---

17          [11]  At the initial hearing, Western's counsel argued that the rent due under Section
18   365(d)(3) should be treated as a payment in the ordinary course of business that would not be
     subject to disgorgement.  Counsel suggested that since it is not unusual for postpetition creditors
19   to be paid in the ordinary course of business without being subject to disgorgement, Western's
     position is not inconsistent with any established priority scheme.  However, because the practical
20   effect of such a payment would still confer a "super-priority" to Western in the event the estate is
     insolvent, see, e.g., In re Leisure Time Sports, Inc., 189 B.R. 511 (Bkrtcy.S.D.Cal.1995)(court
21   enforced stipulation that pre-rejection lease payments would not be subject to disgorgement), the
     Court invited additional briefing in lieu of counsel orally providing various case citations.  That
22   discussion led to the schedule for submission of additional briefs by Western and the Trustee.

23          [12]  At the time Pacific-Atlantic Trading was decided, Section 365(d)(4) provided in
24   pertinent part that "...if the trustee does not assume or reject the unexpired lease of nonresidential
     real property under which the debtor is the lessee within 60 days after the date of the order for
25   relief, or within such additional time as the court, for cause, within such 60-day period, fixes,
     then such lease is deemed rejected, and the trustee shall immediately surrender such
26   nonresidential real property to the lessor."  Section 365(d)(4) now provides in pertinent part that
27   "...an unexpired lease of nonresidential real property under which the debtor is the lessee shall be

28                                                  9

1    60-day period, all estate property was removed from the premises. The landlord subsequently

2    asserted an administrative expense claim for the full amount of the rent owed under the lease for

3    the entire 60-day period even though the estate did not use the space for the entire period. The

4    trustee asserted that the landlord was entitled an administrative claim only for the actual value of

5    the space that was used prior to rejection, not the full amount due under the lease. Based on

6    Section 365(d)(3), however, the Ninth Circuit panel rejected the trustee's position and held that

7    the landlord was entitled to an administrative claim for the full amount of the rent due under the

8    lease for the 60-day period. The circuit panel also specifically reserved any decision on whether

9    a landlord's claim to administrative rent under Section 365(d)(3) is entitled to "super-priority

10   status" over other administrative claims. 27 F.3d at 405. No argument was made by the Chapter

11   7 trustee that he did not have the funds available to pay the rent during the 60-day period.

12       In Koenig Sporting Goods, a Chapter 11 debtor-in-possession made an argument similar

13   to that of the Chapter 7 trustee in Pacific-Atlantic Trading, i.e., that the commercial landlord was

14   only entitled to partial rent for the portion of the month that the premises were occupied by the

15   estate. Based on Section 365(d)(3), however, the Sixth Circuit panel rejected the Chapter 11

16   debtor-in-possession's position and required payment of rent for the entire month. 203 F.3d at

17   990. No argument was made that the debtor did not have the funds available to pay the full

18   amount of the rent, nor did the landlord seek any other sanction or remedy for the debtor's

19   failure to do so.

20       In Midway Airlines, a Chapter 11 debtor-in-possession did not make postpetition

21   payments for telephone equipment that was subject to an unexpired lease. The lease was not

22   rejected until more than 15 months after the case was commenced. In a Chapter 11 proceeding,

23   Section 365(d)(1) requires that timely payments on unexpired leases of personal property must

24   start on the 61st day after the case is filed until the lease is rejected. Based on Section

25   _____

26   deemed rejected...if the trustee does not assume or reject the lease by the earlier of (i) the date
     that is 120 days after the date of the order for relief, or (ii) the date of the entry of an order
27   confirming a plan."

28                                          10

1    365(d)(10), the equipment lessor sought allowance of an administrative claim for the full amount

2    owing under the lease beginning on the 61st day after commencement of the case through the

3    date of rejection, i.e., the full amount of monthly rent for 13 months.  The Fourth Circuit panel

4    allowed an administrative claim for the full amount due under the lease, including any interest,

5    taxes, late fees and attorney's fees.  It specifically rejected, however, the equipment lessor's

6    assertion that its claim under Section 365(d)(10) had priority over other allowed administrative

7    claims.  Moreover, it further rejected the lessor's argument that it was entitled to immediate

8    payment regardless of the administrative solvency of the bankruptcy estate.  406 F.3d at 241-

9    242.

10            In support of his position, the Trustee relies on a variety of cases for the proposition that

11    Section 365(d)(3) does not create a priority for commercial landlords superior to other

12    administrative claimants.  See Trustee's Supplemental Brief at 3:6 to 4:9.  The Trustee argues

13    that Section 365(d)(3) does not require immediate payment of rent under a commercial lease

14    where the estate is administratively insolvent.  Id. at 4:10 to 5:5, citing In re United West, Inc.,

15    87 B.R. 138 (Bkrtcy.D.Nev. 1988).

16            In United West, a Chapter 11 debtor leased commercial real property on a month-to-

17    month basis.  The debtor-in-possession did not assume the lease within 60 days after

18    commencing the case and the lease was deemed rejected pursuant to then-Section 365(d)(4).

19    The bankruptcy court noted that Section 365(d)(3) does not set forth any remedy for

20    nonpayment.  87 B.R. at 140, citing In re Southwest Aircraft Services, Inc., 831 F.2d 848, 853

21    (9th Cir. 1987), cert. denied, 487 U.S. 1206 (1988).  The court rejected the landlord's demand

22    under Section 365(d)(3) for immediate payment of the rent that had accrued postpetition.

23    Instead, the court concluded that "the timing of the payment of this administrative claim [under

24    Section 365(d)(3)], like all other administrative claims, is within the discretion of the bankruptcy

25    court.  In exercising its discretion, the court must consider, inter alia, the status of the case, the

26    ability of the debtor to pay for all administrative expenses, and the efficacy of the remedy of

27    immediate payment subject to surcharge."  87 B.R. at 141.  The United Western court's rationale

28                                                                11

1   is consistent with this circuit's decisions in Southwest Aircraft and Pacific-Atlantic Trading.

2       In Southwest Aircraft, the bankruptcy appellate panel held that after expiration of the 60-

3   day period to assume or reject a commercial lease under then-Section 365(d)(4), the bankruptcy

4   court no longer had authority to extend the period.  The Ninth Circuit reversed, however,

5   concluding that the bankruptcy court could grant an extension of the 60-day deadline as long as

6   the Chapter 11 debtor–in-possession's motion to extend was filed before expiration of the

7   deadline.  Additionally, since Section 365(d)(3) does not state the consequence of its violation,

8   the circuit panel held that the debtor-in-possession's failure to meet the timely payment

9   requirement under Section 365(d)(3) did not require the bankruptcy court to deem  the

10   commercial lease to be rejected.  Instead, the circuit panel observed:

> "We believe that Congress intended the bankruptcy courts to have
> the discretion to consider all of the particular facts and
> circumstances involved in each bankruptcy case and to decide
> whether the consequence of a violation of subsection (d)(3) should
> be the forfeiture of the unassumed lease, some other penalty, or no
> penalty at all."

831 F.2d at 854.  (Emphasis added.)

       After Southwest Aircraft, the Ninth Circuit reiterated in Pacific-Atlantic Trading that

Section 365(d)(3) does not state the consequences for a violation of its terms, 27 F.3d at 405, but

concluded that a lessor must be paid the full amount of the rent that became due during the 60-

day period.  Consistent with Southwest Aircraft, the panel in Pacific-Atlantic Trading did not

require that any penalty at all be imposed for the Chapter 7 trustee's failure to comply with

Section 365(d)(3).[13]

_____

[13]  In In re Telesphere Communications, Inc., 148 B.R. 525 (Bkrtcy.N.D.Ill. 1992)
(Wedoff, J.), the bankruptcy court also noted that Section 365(d)(3) contains no specific remedy,
but relied on its general equitable powers under Section 105(a) to order the Chapter 11 debtor-in-
possession to immediately pay the unpaid portion of rent.  However, Judge Wedoff further
indicated that "Should the debtor in possession lack funds sufficient to comply with this order,
the court will consider a request that enforcement be stayed."  148 B.R. at 531-532.  Thus, the
court fashioned a remedy consistent with both the language of Section 365(d)(3) and the policy
of ratable distribution within creditor classes.

12

1    In the present case, the parties do not dispute that the Trustee does not have the funds

2    available to satisfy every potential administrative rent claim in the case.  This is not surprising

3    since the Trustee filed 31 similar motions to reject nonresidential leases in addition to the Boise

4    Lease.  The Trustee's concern may be heightened inasmuch as Western may be entitled to late

5    fees in the form of interest on any past due rent under Section 44 of the Boise Lease, see

6    Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 852-53 (9th Cir. 2001), plus possible

7    attorney's fees under Section 29 of the Boise Lease.  Id. at 852.  Given the status of the case and

8    the undisputed lack of available funds, see United West, supra, the Court will not penalize the

9    Trustee for delaying payment of Western's rent claim under Section 365(d)(3) until the

10    administrative solvency of the bankruptcy estate can be determined.  Because the Boise Lease

11    already has been rejected and Western's administrative rent claim may be accruing significant

12    interest, a de facto remedy for the Trustee's noncompliance with Section 365(d)(3) is present.

13    Nothing further is required at this stage.

14                                                        **CONCLUSION**

15    For the reasons set forth herein, the Trustee's Motion to Strike will be granted and

16    Western's Payment Motion will be denied to the extent it requests immediate payment of the

17    postpetition rent under the Boise Lease.  The Payment Motion will be granted to the extent it

18    seeks allowance of the requested postpetition rent.  Late fees in the form of interest as well as

19    attorney's fees pursuant to Sections 44 and 29 of the Boise Lease will not be allowed at this

20    time.  A separate order has been entered concurrently  herewith.

21

22    Copies noticed through ECF to:

23
        JEANETTE E. MCPHERSON bkfilings@s-mlaw.com
24      MATTHEW C. ZIRZOW bankruptcynotices@gordonsilver.com,
        bknotices@gordonsilver.com
25      LARS EVENSEN lkevensen@hollandhart.com,
        nrschein@hollandhart.com;ckelly@hollandhart.com;mburton@hollandhart.com
26      VICTORIA L NELSON bkecf@nevadafirm.com,
27        vnelson@nevadafirm.com;paltstatt@nevadafirm.com;rmoss@nevadafirm.com

28                                                              13

JAMES F. LISOWSKI jfltrustee@aol.com, NV15@ecfcbis.com

JAMES F. LISOWSKI lisowskilaw@aol.com

ROBERT R. KINAS rkinas@swlaw.com,
jmcbee@swlaw.com;jmath@swlaw.com;mfull@swlaw.com;cdossier@swlaw.com;
lvdocket@mindspring.com;vcampbell@swlaw.co

JAMES PATRICK SHEA bankruptcyfilings@sheacarlyon.com,
ltreadway@sheacarlyon.com;jshea@sheacarlyon.com;manthony@sheacarlyon.com;
rmsmith@sheacarlyon.com

CLAIRE DOSSIER ckossier@swlaw.com


and sent to BNC to:

All parties on BNC mailing list

JERRY HALL
C/O PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N STREET, N.W.
WASHINGTON, DC 20037

PATRICK J. POTTER
C/O PILLSBURY WINTHROP SHAW PITTMAN, LLP
2300 N STREET, N.W.
WASHINGTON, DC 20037



### # # #

14

# EXHIBIT "2"

**Entered on Docket**
**September 16, 2008**

Hon. Mike K. Nakagawa
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-08-10936-MKN |
| SILVER STATE HELICOPTERS, LLC, | Chapter 7 |
| Debtor. | |
| Jointly administered with | |
| In re | Case No. BK-S-08-10935-MKN |
| SILVER STATE SERVICES CORP., | Chapter 7 |
| Debtor. | Date:   April 23, 2008 |
| | Time:   9:30 a.m. |

**ORDER ON MEMORANDUM DECISION ON MOTION OF
WESTERN AIRCRAFT, INC. FOR ORDER REQUIRING PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM, MADE PURSUANT TO 11 U.S.C. §365(d)(3),
503(b) AND 507(a)(1), AND FOR ALLOWANCE OF ADMINISTRATIVE CLAIM
UNDER 11 U.S.C. §503(b), AND TRUSTEE'S EMERGENCY MOTION TO STRIKE
EXTANT DOCUMENT [DKT. NO. 535] ON ORDER SHORTENING TIME**

The Court having entered its Memorandum Decision on Motion of Western Aircraft, Inc.

for Order Requiring Payment of Administrative Expense Claim, Made Pursuant to 11 U.S.C.

§365(d)(3), 503(b) and 507(a)(1), and for Allowance of Administrative Claim Under 11 U.S.C.

§503(b), and Trustee's Emergency Motion to Strike Extant Document [Dkt. No. 535] on Order

1

1   Shortening Time, concurrently herewith,

2          **IT IS HEREBY ORDERED** that the Trustee's Emergency Motion to Strike Extant

3   Document [Dkt. No. 535] on Order Shortening Time be, and the same hereby is, **GRANTED**.

4          **IT IS FURTHER ORDERED** that the Motion of Western Aircraft, Inc. for Order

5   Requiring Payment of Administrative Expense Claim, Made Pursuant to 11 U.S.C. §365(d)(3),

6   503(b) and 507(a)(1), and for Allowance of Administrative Claim Under 11 U.S.C. §503(b) be,

7   and the same hereby is, **DENIED** insofar as it seeks immediate payment of the postpetition rent

8   allowed under 11 U.S.C. section 365(d)(3).

9          **IT IS FURTHER ORDERED** that Motion of Western Aircraft, Inc. for Order Requiring

10  Payment of Administrative Expense Claim, Made Pursuant to 11 U.S.C. §365(d)(3), 503(b) and

11  507(a)(1), and for Allowance of Administrative Claim Under 11 U.S.C. §503(b) is **GRANTED**

12  insofar as it seeks allowance of an administrative expense claim for rent during the period

13  February 6, 2008 through March 31, 2008, in the total amount of $8,406.90.

14         **IT IS FURTHER ORDERED** that the Motion of Western Aircraft, Inc. for Order

15  Requiring Payment of Administrative Expense Claim, Made Pursuant to 11 U.S.C. §365(d)(3),

16  503(b) and 507(a)(1), and for Allowance of Administrative Claim Under 11 U.S.C. §503(b) is

17  **DENIED WITHOUT PREJUDICE** insofar as it seeks allowance of attorney's fees and costs

18  pursuant to Section 29 or late fees pursuant to Section 44 of the subject lease.

19

20  Copies noticed through ECF to:

21      JEANETTE E. MCPHERSON bkfilings@s-mlaw.com
        MATTHEW C. ZIRZOW bankruptcynotices@gordonsilver.com,
22      bknotices@gordonsilver.com

23      LARS EVENSEN lkevensen@hollandhart.com,
        nrschein@hollandhart.com;ckelly@hollandhart.com;mburton@hollandhart.com

24      VICTORIA L NELSON bkecf@nevadafirm.com,

25       vnelson@nevadafirm.com;paltstatt@nevadafirm.com;rmoss@nevadafirm.com

26      JAMES F. LISOWSKI jfltrustee@aol.com, NV15@ecfcbis.com

        JAMES F. LISOWSKI lisowskilaw@aol.com

27

28                                              2

ROBERT R. KINAS rkinas@swlaw.com,
jmcbee@swlaw.com;jmath@swlaw.com;mfull@swlaw.com;cdossier@swlaw.com;
lvdocket@mindspring.com;vcampbell@swlaw.co

JAMES PATRICK SHEA bankruptcyfilings@sheacarlyon.com,
ltreadway@sheacarlyon.com;jshea@sheacarlyon.com;manthony@sheacarlyon.com;
rmsmith@sheacarlyon.com

CLAIRE DOSSIER ckossier@swlaw.com

NANCY L. ALLF nancy_allf@gshllp.com,
karen_lawrence@gshllp.com;anne_pieroni@gshllp.com

LOUIS M. BUBALA lbubala@jonesvargas.com,
tbw@jonesvargas.com;aanthony@jonesvargas.com

JANET L. CHUBB tbw@jonesvargas.com

BRIGID M. HIGGINS bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

BRIAN E HOLTHUS bankruptcy@juww.com

NANCY HOTCHKISS nhotchkiss@trainorfairbrook.com, palshabazz@trainorfairbrook.com

PETER C. LOWN petelown@earthlink.net

SUSAN L. MYERS smyers@lionelsawyer.com,
gbagley@lionelsawyer.com;bklsclv@lionelsawyer.com

MICHAEL REED danielle.goff@mvbalaw.com,
dgibson@mvbalaw.com,kmorris@mvbalaw.com

MICHAEL REED dgibson@mvbalaw.com, dgibson@mvbalaw.com,kmorris@mvbalaw.com

GEORGE W SHUSTER george.shuster@wilmerhale.com

AMBRISH S. SIDHU ecfnotices@sidhulawfirm.com

SHARON L. STOLTE sstolte@stinson.com

U.S. TRUSTEE - LV - 7 USTPRegion17.LV.ECF@usdoj.g

JUSTIN ZARCONE jzarcone@shreveandassoc.com

ANTHONY A. ZMAILA azmaila@nevadafirm.com,
    bkecf@nevadafirm.com;mbarnes@nevadafirm.com,paltstatt@nevadafirm.c

and sent to BNC to:

JERRY HALL
C/O PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N STREET, N.W.
WASHINGTON, DC 20037

3

PATRICK J. POTTER
C/O PILLSBURY WINTHROP SHAW PITTMAN, LLP
2300 N STREET, N.W.
WASHINGTON, DC 20037

# # #

# EXHIBIT "3"

**Entered on Docket**
**September 17, 2008**

_____
**Hon. Mike K. Nakagawa**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re | )   Case No. BK-S-08-10936-MKN |
| SILVER STATE HELICOPTERS, LLC, | )   Chapter 7 |
| Debtor. | ) |
| Jointly administered with | ) |
| In re | )   Case No. BK-S-08-10935-MKN |
| SILVER STATE SERVICES CORP., | )   Chapter 7 |
| Debtor. | )   Date:  April 23, 2008 <br> )   Time:  9:30 a.m. |

**(AMENDED) MEMORANDUM DECISION ON MOTION OF**
**WESTERN AIRCRAFT, INC. FOR ORDER REQUIRING PAYMENT OF**
**ADMINISTRATIVE EXPENSE CLAIM, MADE PURSUANT TO 11 U.S.C. §365(d)(3),**
**503(b) AND 507(a)(1), AND FOR ALLOWANCE OF ADMINISTRATIVE CLAIM**
**UNDER 11 U.S.C. §503(b), AND TRUSTEE'S EMERGENCY MOTION TO STRIKE**
**EXTANT DOCUMENT [DKT. NO. 535] ON ORDER SHORTENING TIME**

    These matters were heard on April 23, 2008.  The appearances of counsel were noted on the record.  After presentation of oral arguments, the matters were taken under submission based on the written materials submitted by the parties and the representations of counsel at the hearing.

1

# BACKGROUND[1]

Silver State Helicopters, LLC ("Debtor") filed a voluntary petition for Chapter 7 liquidation on February 4, 2008.[2]  (Dkt# 1) James F. Lisowski, Sr., was appointed as the bankruptcy trustee ("Trustee") to administer the case.  The petition was a "skeleton" petition inasmuch as it was accompanied only by a list of 20 largest unsecured creditors and a mailing matrix, but no schedules of assets and liabilities or a statement of financial affairs.  Amended schedules of assets and liabilities were filed on February 19, 2008.  (Dkt#88) An amended personal property Schedule "B" along with an amended executory contract and unexpired lease Schedule "G" was filed on March 6, 2008.  (Dkt# 179)

On March 13, 2008, a Motion for Order Requiring Payment of Administrative Expense Claim Made ("Payment Motion") Pursuant to 11 U.S.C. §§ 365(d)(3), 503(b) and 507(a)(1), and For Allowance of Administrative Expense Claim Under 11 U.S.C. § 503(b) (Dkt#222) was filed by Western Aircraft, Inc. ("Western").  The Payment Motion was accompanied by a supporting legal memorandum ("Western Brief") (Dkt#223) and a Declaration of Allen Hoyt ("Hoyt Declaration") (Dkt#224).  On March 14, 2008, the Trustee filed an Emergency Motion for an Order Authorizing Rejection of a Lease of Non-Residential Real Property Effective March 31, 2008 (Dkt#256).  Both the latter motion ("Lease Rejection Motion") and the Payment Motion pertain to the same lease of aircraft hangar space located in Boise, Idaho ("Boise Lease").[3]  On

---

[1]  In this Memorandum Decision, all references to "Section" shall be to the provisions of the Bankruptcy Code, 11 U.S.C. section 101, et seq., unless otherwise indicated.  Likewise, all references to "Rule" shall be to the Federal Rules of Bankruptcy Procedure unless otherwise indicated.

[2]  On the same date, a separate Chapter 7 petition was filed by a related entity, Silver State Services Corporation, denominated Case No. 08-10935.  On May 22, 2008, in both cases, orders were entered (Dkt #s 251 and 633) for the two cases to be jointly administered with Silver State Helicopters to serve as the lead case.

[3]  On the same date, the Trustee filed 31 similar motions involving other aircraft hangar spaces located in various parts of the United States.

1   March 18, 2008, an order was entered shortening time ("OST") so that the Payment Motion

2   could be heard on April 1, 2008. (Dkt#269)

3         On March 25, 2008, a hearing on the Lease Rejection Motion was conducted. After

4   arguments were presented, the Court granted the motion and the Boise Lease was rejected

5   effective March 31, 2008. A written order was entered on June 2, 2008. (Dkt# 669)

6         The Payment Motion was initially heard on April 1, 2008. The Trustee had filed written

7   opposition ("Trustee's Opposition") on March 27, 2008. (Dkt#349)   In response, Western filed

8   a Supplement to Declaration of Allen Hoyt ("Supplemental Hoyt Declaration") as well as a

9   Declaration of Patrick J. Potter ("Potter Declaration") in support of the Payment Motion. (Dkt #s

10  368 and 369)

11        At the April 1 hearing ("initial hearing") on the Payment Motion, the Court directed

12  counsel for Western and the Trustee to file additional briefs on the issue of whether a landlord of

13  nonresidential real property is entitled to a postpetition administrative claim that has priority

14  over other administrative creditors.  Western was given until April 8 to file a brief, the Trustee

15  was given until April 18 to file his memorandum, and the hearing was continued to April 23,

16  2008.

17        In lieu of an additional brief, Western filed a Notice of Intent ("Intent Notice") on April

18  7, 2008 (Dkt# 428) that simply repeated its original legal position and did not address the issue

19  framed by the Court.  On April 18, 2008, the Trustee filed his brief ("Trustee's Supplemental

20  Brief") addressing whether a landlord is afforded a "super-priority administrative claim" for the

21  estate's obligations on an unexpired lease of nonresidential real property prior to rejection.

22  (Dkt#520) A joinder in the Trustee's response was filed by secured creditor ORIX Finance

23  Corporation ("ORIX").  (Dkt#522)   On April 22, 2008, without leave of court, Western filed a

24  reply ("Western Supplemental Reply") to the briefs submitted by the Trustee and ORIX.  (Dkt#

25  535).  With respect to the unauthorized reply filed by Western, the Trustee filed an Emergency

26  Motion to Strike Extant Document [Dkt. No. 535] on Order Shortening Time ("Motion to

27

28                                          3

1   Strike"). (Dkt# 537)

2        A hearing was conducted on April 23, 2008. After oral arguments were presented, the

3   matter was taken under submission.

4                        **APPLICABLE LEGAL STANDARDS**

5        The treatment of executory contracts and unexpired leases is governed by Section 365.

6   Subject to bankruptcy court approval, a trustee or a debtor-in-possession may assume or reject an

7   executory contract or unexpired lease of the debtor. See 11 U.S.C. § 365(a).[4]  Section 365 treats

8   leases of nonresidential real property leases differently than leases of residential real property.

9   In a Chapter 7 proceeding, an unexpired lease of residential real property is deemed rejected 60

10  days after the case is commenced, unless it is assumed by the bankruptcy trustee or additional

11  time is ordered by the bankruptcy court. See 11 U.S.C. § 365(d)(1). In bankruptcy

12  reorganization proceedings, an unexpired lease of residential real property may be assumed or

13  rejected any time before confirmation of the reorganization or debt adjustment plan, unless a

14  specific time is ordered by the bankruptcy court. See 11 U.S.C. § 365(d)(2).

15       With respect to an unexpired lease of nonresidential real property, Section 365 directs

16  that the debtor-in-possession "shall timely perform all of the obligations of the debtor" after the

17  case is filed "until such lease is assumed or rejected." See 11 U.S.C. § 365(d)(3)(Emphasis

18  added.). For cause shown, however, the bankruptcy court "may extend...the time for

19  performance of any such obligation that arises within 60 days after the [petition] date..., but the

20  time for performance shall not be extended beyond such 60 day period." Id. (Emphasis added.)

21  The debtor has the burden of demonstrating cause for an extension of the performance obligation

22  under Section 365(d)(3). See, e.g., In re Pac-West Telecomm, Inc., 377 B.R. 119, 126

23  (Bkrtcy.D.Del. 2007)(denying request for extension where debtors merely alleged that they were

24  too busy during first 60 days of bankruptcy case).

25  _____

26       [4] While Section 365 refers to the rights and obligations of a bankruptcy trustee, a
    Chapter 11 debtor-in-possession has the same rights and obligations, with exceptions not
27  applicable to this case, under Section 1107(a).

28                                    4

1        If an unexpired lease of nonresidential real property is not assumed by the debtor-in-

2    possession within 120 days after commencement of the bankruptcy case, the lease is deemed

3    rejected and the subject property must be surrendered.  See 11 U.S.C. § 365(d)(4).[5]  Within the

4    120-day period, a 90-day extension of the period may be obtained from the court on cause

5    shown.  See 11 U.S.C. § 365(d)(4)(B)(i).  Subsequent extensions may be granted only with the

6    consent of the lessor.  See 11 U.S.C. § 365(d)(4)(B)(ii).

7                       **DISCUSSION**

8        The Court first addresses the threshold question of whether the Western Supplemental

9    Brief should be stricken.  Then the Court will address whether immediate payment of

10    postpetition rent is required under the circumstances presented.

11    **I.     TRUSTEE'S MOTION TO STRIKE.**

12        At the initial hearing on April 1, counsel for Western requested an opportunity to

13    brief the issue of whether nonresidential real property landlords effectively or legally have

14    priority status for unpaid postpetition rent ahead of other administrative claimants.  The briefing

15    schedule agreed by the parties was specific: Western's brief was due on April 8, 2008, and the

16    Trustee's memorandum was due on April 18, 2008.  The April 23, 2008 continued hearing date

17    also was agreed.  Instead of providing the additional authorities requested by the Court, however,

18    Western simply filed its "Notice of Intent" stating that it "does not believe that additional

19    briefing of the issue is warranted given the unambiguous text of Section 365(d)(3); though

20    Western has no objection to the trustee briefing the issue if he wishes."  See Intent Notice at

21    2:23-25.

22        In compliance with the agreed schedule, the Trustee filed his brief by the April 18

23    deadline.  Four days later, which was the day before the continued hearing, Western filed its

24    Supplemental Reply without leave of court.  Not unexpectedly, the Trustee filed his Motion to

25

26        [5]  The unexpired leases of nonresidential real property must be assumed or rejected by the

27    earlier of 120 days after the petition date or the date a bankruptcy plan is confirmed.  See 11
U.S.C. § 365(d)(4)(A)(i and ii).

28                             5

1  Strike the late-filed brief, but seeks no other sanction.

2          At the hearing, Western's counsel argued that unauthorized reply brief should not be

3  stricken because there was no order prohibiting Western from filing the brief.  Counsel argued

4  that under "usual motion practice", the moving party is allowed to file the final brief.[6]  It

5  appears, however, that counsel was unaware or had simply forgotten that the hearing on the

6  Payment Motion was scheduled pursuant to the OST specifically requested by Western's

7  attorneys.  The OST prepared by Western's counsel specifically provided that any replies in

8  support of the Payment Motion must be filed no later than noon on March 31, 2008.  In reply to

9  the Trustee's Opposition, Western filed the Supplemental Hoyt Declaration as well as the Potter

10  Declaration.

11          At the initial hearing, additional briefing was permitted by the Court because Western's

12  counsel requested it.  A specific and limited schedule for submission of the parties' briefs was

13  agreed.  Western submitted its Intent Notice prior to the deadline.  Having requested opportunity

14  to brief the issue, Western specifically eschewed additional briefing.  Only after the Trustee

15  timely filed his additional brief did Western file its Supplemental Reply that contains more pages

16  than the Trustee's memorandum and also seeks additional relief.

17          Against this backdrop, Western's position is indefensible.  If the Supplemental Reply had

18  been merely late, its filing might be characterized as neglect.  In view of the Intent Notice filed

19  by Western as well as the bizarre justification offered at the hearing, however, submission of the

20  Supplemental Reply was, at best, a transparent attempt to "sandbag" the Trustee.  The

21  Supplemental Reply was not authorized and will be stricken.[7]

22  _____

23          [6] Counsel professed to have been "taken aback" by the Trustee's Motion to Strike and
    asserted that his co-counsel and his local counsel would have brought it to his attention if they
24  thought the Supplemental Reply was not authorized.  It is clear that Western already had
    exercised its opportunity to reply under the very OST its counsel had prepared.  It is unclear why
25  none of Western's counsel were aware of it.

26          [7] The Court also will not consider the joinder filed by ORIX regarding the Trustee's
27  Supplemental Brief since ORIX never originally filed a response to the Payment Motion.

28                                            6

## II. WESTERN'S PAYMENT MOTION.

The Debtor's schedules did not disclose the Boise Lease until March 6, 2008 when the Debtor filed its Schedule "G". Prior to the filing of Schedule "G", however, Western allegedly contacted the Trustee on several occasions, requesting payment under the Boise Lease. See Payment Motion at 2:28 to 3:7. At the initial hearing, the Trustee's counsel disputed that communications were received from Western and indicated that the Trustee had no specific knowledge of the Boise Lease until after the Debtor filed Schedule "G". The parties do not dispute, however, that Western was not paid postpetition rent for the partial month of February[8] nor the entire month of March. In addition to the foregoing rent, Western asserts that the estate would be obligated to pay postpetition legal fees incurred pursuant to Section 29 of the Boise Lease. See Western Brief at 9:12-14.[9]

As previously noted, Section 365(d)(2) applies only in proceedings other than a Chapter 7 liquidation and includes no provision to reduce the amount of time for a trustee to make a determination to assume or reject an unexpired lease of nonresidential real property.

---

[8] A partial month of rent under a lease is commonly referred to as a "stub month" with the amount determined by deriving the percentage of the full month after the bankruptcy petition is filed, multiplied by the monthly rent. Apparently, a majority of courts include the stub month in the bankruptcy estate's rent obligation under Section 365(d)(3). See In re Picturesque, LLC, 2006 WL 3820891 (Bkrtcy.D.Ariz. December 22, 2006)(Hollowell, J.). Although the Payment Motion does not specify the amount of rent being sought by Western, Exhibit "1" to the Supplemental Hoyt Declaration indicates that Western is seeking stub rent for the period February 6 through February 29, 2008 in the amount of $3,806.90 and full rent for the period March 1 through March 31, 2008, in the amount of $4,600. The total amount for the period February 6, 2008 through March 31, 2008, is $8,406.90. Although Exhibit "1" for some reason calculated the stub rent from February 6, 2008 rather than the February 4, 2008 petition date, the Trustee has not disputed Western's inclusion of the stub rent in its administrative claim. Exhibit "1" does not include a request for a late fee.

[9] At the initial hearing, the Trustee disputed the reasonableness of the fees that Western was seeking under Section 29 of the Boise Lease, taking particularly exception to the hourly rate apparently being charged. Because any dispute over the reasonableness of the hourly rate might require an evidentiary hearing, the Court deferred any ruling on the attorney's fees being claimed by Western under the Boise Lease.

1   Presumably, Western did not seek to compel the Trustee to assume or reject the Boise Lease

2   under Section 365(d)(2) because the provision simply does not apply.

3          In contrast, Section 365(d)(3) applies in Chapter 7 liquidation proceedings as well under

4   the reorganization chapters of the Bankruptcy Code and requires immediate performance of the

5   rent obligations for such leases after the bankruptcy case is commenced.  Section 365(d)(3)

6   clearly affords more protective treatment to nonresidential lessors whose premises may be

7   involved in prolonged efforts to reorganize.  Upon a showing of cause, a bankruptcy trustee or a

8   debtor-in-possession may be granted temporary relief from such lease performance but Section

9   365(d)(3) specifically provides that "...the time for performance shall not be extended beyond

10  such 60-day period."[10]  Thus, even if cause is shown, the obligations that arise under a

11  nonresidential real property lease within the initial 60-day period cannot be postponed to a time

12  after the 60-day period has elapsed.

13         The Trustee, however, did not request an extension to time to meet the estate's obligation

14  under Section 365(d)(3) to pay postpetition rent. Rather, the Trustee filed a motion to reject the

15  Boise Lease shortly after the Debtor confirmed the existence of the lease by filing its Schedule

16  "G". As a result of the Trustee's motion, the Boise Lease was rejected as of March 31, 2008.

17         While neither party disputes that the Trustee's rejection of the Boise Lease limits the

18  Trustee's exposure under the lease, rejection does not address the obligation under Section

19  365(d)(3).  Rather, the Trustee argues that he should not be required to immediately pay the rent

20  otherwise demanded by Section 365(d)(3) because there are no funds presently on hand to pay

21  the claimed rent.  See Trustee's Opposition at 3:15-18.  At the initial hearing, counsel for the

22  Trustee indicated that there was no objection as to allowance of an administrative claim for the

23

24  _____

25      [10]  Under Section 365(d)(3), the maximum extension permitted in the instant case would
    have been to April 4, 2008, i.e., the 60th day after the filing of the Debtor's bankruptcy petition.

26  By that date, the Trustee would have been obligated under the Boise Lease to have made the
    February and March rental payments.  But for the rejection effective March 31, 2008, the Trustee

27  arguably would have been obligated to pay the rent due on April1.

28                                                    8

1    amount of rent due under the Boise Lease, but merely as to the timing of the payment. While not

2    disputing the Trustee's asserted lack of immediately available funds, Western still argues that

3    Section 365(d)(3) demands immediate payment. Western now specifically rejects any assertion

4    that its claim has priority over any other administrative claim. See Intent Notice at 2:2:9-12 and

5    2:22-23.[11]

6         In support of its position that it is entitled to immediate payment notwithstanding the lack

7    of available funds, Western relies on the circuit court decisions in Towers v. Chickering &

8    Gregory (In re Pacific-Atlantic Trading Co.), 27 F.3d 401 (9th Cir. 1994), Koenig Sporting

9    Goods Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.), 203 B.R. 986 (6th Cir. 2000),

10   and CIT Communications Finance Corp. v. Midway Airlines Corp. (In re Midway Airlines

11   Corporation), 406 F.3d 229 (4th Cir. 2005). See Western Brief at 3:4 to 7:19. None of these

12   decisions, however, is dispositive.

13        In Pacific-Atlantic Trading, the Chapter 7 trustee did not formally reject an unexpired

14   lease of a substantial amount of commercial office space. The lease was deemed rejected 60

15   days after entry of an order for relief pursuant to then-Section 365(d)(4).[12] Prior to the end of the

16   _____

17        [11] At the initial hearing, Western's counsel argued that the rent due under Section
     365(d)(3) should be treated as a payment in the ordinary course of business that would not be
18   subject to disgorgement. Counsel suggested that since it is not unusual for postpetition creditors
     to be paid in the ordinary course of business without being subject to disgorgement, Western's
19   position is not inconsistent with any established priority scheme. However, because the practical
     effect of such a payment would still confer a "super-priority" to Western in the event the estate is
20   insolvent, see, e.g., In re Leisure Time Sports, Inc., 189 B.R. 511 (Bkrtcy.S.D.Cal.1995)(court
     enforced stipulation that pre-rejection lease payments would not be subject to disgorgement), the
21   Court invited additional briefing in lieu of counsel orally providing various case citations. That
     discussion led to the schedule for submission of additional briefs by Western and the Trustee.
22

23        [12] At the time Pacific-Atlantic Trading was decided, Section 365(d)(4) provided in
     pertinent part that "...if the trustee does not assume or reject the unexpired lease of nonresidential
24   real property under which the debtor is the lessee within 60 days after the date of the order for
     relief, or within such additional time as the court, for cause, within such 60-day period, fixes,
25   then such lease is deemed rejected, and the trustee shall immediately surrender such
     nonresidential real property to the lessor." Section 365(d)(4) now provides in pertinent part that
26   "...an unexpired lease of nonresidential real property under which the debtor is the lessee shall be
27

28                                               9

1    60-day period, all estate property was removed from the premises. The landlord subsequently

2    asserted an administrative expense claim for the full amount of the rent owed under the lease for

3    the entire 60-day period even though the estate did not use the space for the entire period. The

4    trustee asserted that the landlord was entitled an administrative claim only for the actual value of

5    the space that was used prior to rejection, not the full amount due under the lease. Based on

6    Section 365(d)(3), however, the Ninth Circuit panel rejected the trustee's position and held that

7    the landlord was entitled to an administrative claim for the full amount of the rent due under the

8    lease for the 60-day period. The circuit panel also specifically reserved any decision on whether

9    a landlord's claim to administrative rent under Section 365(d)(3) is entitled to "super-priority

10    status" over other administrative claims. 27 F.3d at 405. No argument was made by the Chapter

11    7 trustee that he did not have the funds available to pay the rent during the 60-day period.

12        In Koenig Sporting Goods, a Chapter 11 debtor-in-possession made an argument similar

13    to that of the Chapter 7 trustee in Pacific-Atlantic Trading, i.e., that the commercial landlord was

14    only entitled to partial rent for the portion of the month that the premises were occupied by the

15    estate. Based on Section 365(d)(3), however, the Sixth Circuit panel rejected the Chapter 11

16    debtor-in-possession's position and required payment of rent for the entire month. 203 F.3d at

17    990. No argument was made that the debtor did not have the funds available to pay the full

18    amount of the rent, nor did the landlord seek any other sanction or remedy for the debtor's

19    failure to do so.

20        In Midway Airlines, a Chapter 11 debtor-in-possession did not make postpetition

21    payments for telephone equipment that was subject to an unexpired lease. The lease was not

22    rejected until more than 15 months after the case was commenced. In a Chapter 11 proceeding,

23    Section 365(d)(1) requires that timely payments on unexpired leases of personal property must

24    start on the 61st day after the case is filed until the lease is rejected. Based on Section

25

26    deemed rejected...if the trustee does not assume or reject the lease by the earlier of (i) the date

      that is 120 days after the date of the order for relief, or (ii) the date of the entry of an order

27    confirming a plan."

28                                           10

1   365(d)(10), the equipment lessor sought allowance of an administrative claim for the full amount

2   owing under the lease beginning on the 61st day after commencement of the case through the

3   date of rejection, i.e., the full amount of monthly rent for 13 months.  The Fourth Circuit panel

4   allowed an administrative claim for the full amount due under the lease, including any interest,

5   taxes, late fees and attorney's fees.  It specifically rejected, however, the equipment lessor's

6   assertion that its claim under Section 365(d)(10) had priority over other allowed administrative

7   claims.  Moreover, it further rejected the lessor's argument that it was entitled to immediate

8   payment regardless of the administrative solvency of the bankruptcy estate.  406 F.3d at 241-

9   242.

10          In support of his position, the Trustee relies on a variety of cases for the proposition that

11  Section 365(d)(3) does not create a priority for commercial landlords superior to other

12  administrative claimants.  See Trustee's Supplemental Brief at 3:6 to 4:9.  The Trustee argues

13  that Section 365(d)(3) does not require immediate payment of rent under a commercial lease

14  where the estate is administratively insolvent.  Id. at 4:10 to 5:5, citing In re United West, Inc.,

15  87 B.R. 138 (Bkrtcy.D.Nev. 1988).

16          In United West, a Chapter 11 debtor leased commercial real property on a month-to-

17  month basis.  The debtor-in-possession did not assume the lease within 60 days after

18  commencing the case and the lease was deemed rejected pursuant to then-Section 365(d)(4).

19  The bankruptcy court noted that Section 365(d)(3) does not set forth any remedy for

20  nonpayment.  87 B.R. at 140, citing In re Southwest Aircraft Services, Inc., 831 F.2d 848, 853

21  (9th Cir. 1987), cert. denied, 487 U.S. 1206 (1988).  The court rejected the landlord's demand

22  under Section 365(d)(3) for immediate payment of the rent that had accrued postpetition.

23  Instead, the court concluded that "the timing of the payment of this administrative claim [under

24  Section 365(d)(3)], like all other administrative claims, is within the discretion of the bankruptcy

25  court.  In exercising its discretion, the court must consider, inter alia, the status of the case, the

26  ability of the debtor to pay for all administrative expenses, and the efficacy of the remedy of

27  immediate payment subject to surcharge." 87 B.R. at 141.  The United Western court's rationale

28                                                          11

1   is consistent with this circuit's decisions in Southwest Aircraft and Pacific-Atlantic Trading.

2         In Southwest Aircraft, the bankruptcy appellate panel held that after expiration of the 60-

3   day period to assume or reject a commercial lease under then-Section 365(d)(4), the bankruptcy

4   court no longer had authority to extend the period.  The Ninth Circuit reversed, however,

5   concluding that the bankruptcy court could grant an extension of the 60-day deadline as long as

6   the Chapter 11 debtor–in-possession's motion to extend was filed before expiration of the

7   deadline.  Additionally, since Section 365(d)(3) does not state the consequence of its violation,

8   the circuit panel held that the debtor-in-possession's failure to meet the timely payment

9   requirement under Section 365(d)(3) did not require the bankruptcy court to deem  the

10   commercial lease to be rejected.  Instead, the circuit panel observed:

> "We believe that Congress intended the bankruptcy courts to have
> the discretion to consider all of the particular facts and
> circumstances involved in each bankruptcy case and to decide
> whether the consequence of a violation of subsection (d)(3) should
> be the forfeiture of the unassumed lease, some other penalty, or no
> penalty at all."

831 F.2d at 854.  (Emphasis added.)

         After Southwest Aircraft, the Ninth Circuit reiterated in Pacific-Atlantic Trading that

Section 365(d)(3) does not state the consequences for a violation of its terms, 27 F.3d at 405, but

concluded that a lessor must be paid the full amount of the rent that became due during the 60-

day period.  Consistent with Southwest Aircraft, the panel in Pacific-Atlantic Trading did not

require that any penalty at all be imposed for the Chapter 7 trustee's failure to comply with

Section 365(d)(3).[13]

---

[13]   In In re Telesphere Communications, Inc., 148 B.R. 525 (Bkrtcy.N.D.Ill. 1992)
(Wedoff, J.), the bankruptcy court also noted that Section 365(d)(3) contains no specific remedy,
but relied on its general equitable powers under Section 105(a) to order the Chapter 11 debtor-in-
possession to immediately pay the unpaid portion of rent.  However, Judge Wedoff further
indicated that "Should the debtor in possession lack funds sufficient to comply with this order,
the court will consider a request that enforcement be stayed."  148 B.R. at 531-532.  Thus, the
court fashioned a remedy consistent with both the language of Section 365(d)(3) and the policy
of ratable distribution within creditor classes.

1    In the present case, the parties do not dispute that the Trustee does not have the funds

2 available to satisfy every potential administrative rent claim in the case. This is not surprising

3 since the Trustee filed 31 similar motions to reject nonresidential leases in addition to the Boise

4 Lease. The Trustee's concern may be heightened inasmuch as Western may be entitled to late

5 fees in the form of interest on any past due rent under Section 44 of the Boise Lease, see

6 Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 852-53 (9th Cir. 2001), plus possible

7 attorney's fees under Section 29 of the Boise Lease. Id. at 852. Given the status of the case and

8 the undisputed lack of available funds, see United West, supra, the Court will not penalize the

9 Trustee for delaying payment of Western's rent claim under Section 365(d)(3) until the

10 administrative solvency of the bankruptcy estate can be determined. Because the Boise Lease

11 already has been rejected and Western's administrative rent claim may be accruing significant

12 interest, a de facto remedy for the Trustee's noncompliance with Section 365(d)(3) is present.

13 Nothing further is required at this stage.

14          **CONCLUSION**

15    For the reasons set forth herein, the Trustee's Motion to Strike will be granted and

16 Western's Payment Motion will be denied to the extent it requests immediate payment of the

17 postpetition rent under the Boise Lease. The Payment Motion will be granted to the extent it

18 seeks allowance of the requested postpetition rent. Late fees in the form of interest as well as

19 attorney's fees pursuant to Sections 44 and 29 of the Boise Lease will not be allowed at this

20 time. A separate order has been entered concurrently herewith.

21

22 Copies noticed through ECF to:

23  JEANETTE E. MCPHERSON bkfilings@s-mlaw.com
   MATTHEW C. ZIRZOW bankruptcynotices@gordonsilver.com,

24  bknotices@gordonsilver.com

25  LARS EVENSEN lkevensen@hollandhart.com,
   nrschein@hollandhart.com;ckelly@hollandhart.com;mburton@hollandhart.com

26  VICTORIA L NELSON bkecf@nevadafirm.com,

27   vnelson@nevadafirm.com;paltstatt@nevadafirm.com;rmoss@nevadafirm.com

28            13

1  JAMES F. LISOWSKI jfltrustee@aol.com, NV15@ecfcbis.com

2  JAMES F. LISOWSKI lisowskilaw@aol.com

3  ROBERT R. KINAS rkinas@swlaw.com,
   jmcbee@swlaw.com;jmath@swlaw.com;mfull@swlaw.com;cdossier@swlaw.com;
4  lvdocket@mindspring.com;vcampbell@swlaw.co

5  JAMES PATRICK SHEA bankruptcyfilings@sheacarlyon.com,
   ltreadway@sheacarlyon.com;jshea@sheacarlyon.com;manthony@sheacarlyon.com;
6  rmsmith@sheacarlyon.com

7  CLAIRE DOSSIER ckossier@swlaw.com

8  NANCY L. ALLF nancy_allf@gshllp.com,
   karen_lawrence@gshllp.com;anne_pieroni@gshllp.com
9

10 LOUIS M. BUBALA lbubala@jonesvargas.com,
   tbw@jonesvargas.com;aanthony@jonesvargas.com
11 JANET L. CHUBB tbw@jonesvargas.com

12 BRIGID M. HIGGINS bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

13 BRIAN E HOLTHUS bankruptcy@juww.com

14 NANCY HOTCHKISS nhotchkiss@trainorfairbrook.com, palshabazz@trainorfairbrook.com

15 PETER C. LOWN petelown@earthlink.net

16 SUSAN L. MYERS smyers@lionelsawyer.com,
   gbagley@lionelsawyer.com;bklsclv@lionelsawyer.com
17

18 MICHAEL REED danielle.goff@mvbalaw.com,
   dgibson@mvbalaw.com,kmorris@mvbalaw.com
19 MICHAEL REED dgibson@mvbalaw.com, dgibson@mvbalaw.com,kmorris@mvbalaw.com

20 GEORGE W SHUSTER george.shuster@wilmerhale.com

21 AMBRISH S. SIDHU ecfnotices@sidhulawfirm.com

22 SHARON L. STOLTE sstolte@stinson.com

23 U.S. TRUSTEE - LV - 7 USTPRegion17.LV.ECF@usdoj.g

24 JUSTIN ZARCONE jzarcone@shreveandassoc.com

25 ANTHONY A. ZMAILA azmaila@nevadafirm.com,
   bkecf@nevadafirm.com;mbarnes@nevadafirm.com,paltstatt@nevadafirm.c

26

27

28
                                        14

1    and sent to BNC to:

2    JERRY HALL
     C/O PILLSBURY WINTHROP SHAW PITTMAN LLP
3    2300 N STREET, N.W.
     WASHINGTON, DC 20037
4    PATRICK J. POTTER
     C/O PILLSBURY WINTHROP SHAW PITTMAN, LLP
5    2300 N STREET, N.W.
     WASHINGTON, DC 20037
6

7

8                                    # # #

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                      15